[File No. 6521.]

RENVILLE COUNTY, a Municipal Corporation, Appellant, v. ISAK MATTSON, Respondent.

(279 N. W. 1.)

Opinion filed March 29, 1938.

*P. M. Clark* and *R. H. Bosard*, for appellant.

*L. J. Palda, Jr.* and *Geo. A. McGee,* for respondent.

BURR, J. This is an action to recover on a check posted as a guaranty that a bidder on a contract for the erection of a county courthouse would enter into the contract if his bid was accepted.

Renville county applied to the Federal Emergency Administration for a grant to aid it in building a courthouse. The plans and specifications prepared contained a copy of the proposed contract and required any contract entered into would have among its "component parts" that the contract would be subject to the "rules and regulations of the Federal Emergency Administrator of Public Works *heretofore promulgated and which may hereafter be promulgated."* These rules contained a wage schedule, and the plans, specifications, and form of contract were approved by the state director of the Federal Emergency Administration, known as PWA.

On April 9, 1936, notification was given that bids would be received up to 2 P. M. of May 15, 1936, and that any bids for such construction were to be made in accordance with the plans and specifications on file at the office of the architect in Minot and other places.

The notice stated: "Attention is called to the fact that not less than the minimum wage rates provided in the specifications must be paid on the project;" and contained this provision: "Each bid must be accompanied by a certified check drawn on a solvent bank in the State of North Dakota, payable to the Renville County Auditor, Mohall, N. D., in a sum equal to at least 5% of the bid."

On May 6 the state director of PWA issued a new wage scale—Addendum No. 2—comprising three subdivisions known as "Items." Item No. 1 is denominated "Wage schedule exhibits 'I' P 1–2" and provides, "Schedule of wage rates shall be amended in accordance with revised 'Schedule of minimum wage rates' approved 5–6–36 and appended hereto." The first page of Addendum No. 2 sets forth the three items in full and the remaining pages the "Revised Wage Schedule" at an hourly wage rate stated. The defendant obtained a copy of the plans and specifications for the purpose of preparing a bid and noted the wage schedule therein stated.

A copy of Addendum No. 2, dated May 9, 1936, was mailed to the defendant but not called to his attention by his office force. Two or three hours before the opening of the bids he found the letter and, opening it, noticed on the first page Item No. 2 dealing with alternate bids. He had already computed his bid and, without noticing Item No. 1, prepared his bid on the 15th of May, filing it with the county auditor in person shortly before the bids were opened. With this bid he deposited a certified check in the sum of $4,650 in accordance with the requirement of the notice.

The defendant was the lowest bidder. The necessary changes caused by the acceptance of certain alternates reduced his contract price to $82,846, and he was awarded the contract.

Later in the day Mr. Boyd, the representative of the state director, asked him what cut he would make in his bid if there was a return to the old wage schedule, and thus the defendant had actual knowledge for the first time of the revised wage scale. Upon notifying the representative that the bid had been prepared upon the old wage scale he was told the commissioners did not want the increased wage scale and he was advised "to make out a breakdown" and send it to the state director.

The "breakdown" is a statement made on a form furnished by the PWA listing all of the materials and labor in connection with each division of the work for the purpose of showing the elements which entered into the computation of the bid.

On the 16th of May he discussed with the commissioners the possibility of having the original wage scale substituted for Addendum No.

2. Thus, by May 15 and 16 he knew the contract to be signed had as one of its component parts Addendum No. 2 as the wage scale.

A contract in the form set forth in the plans and specifications was prepared, was signed by the board of county commissioners on the 16th day of May, 1936, and by the defendant in the office of the architect on May 20, 1936. Thus, when the defendant signed the contract on May 20, Addendum No. 2 was as much a part of the contract as if completely and specifically embodied therein. He knew beyond any doubt that Addendum No. 2 was a "component part" of the contract and that the county commissioners, the state director, and the architect who prepared the contract so considered it. He knew also that it was one of the rules "heretofore promulgated," whatever may have been the schedule he used as a basis for preparing his bid.

It is true the state director, on receiving the breakdown, wired for information as to when the Addendum No. 2 had been received by defendant and on May 18 notified the board of county commissioners that the award of the contract to the defendant in accordance with his proposal would be approved subject to the conditions, among others:

(2) "That satisfactory contract documents in the number and manner required be submitted for approval by the State Director;"

(3) "That all contracts are based upon the approved plans and specifications and all addenda issued thereto prior to receipt of bids."

The letter also stated:

"We understand that there may be some question as to whether Isak Mattson was fully aware of the contents of Addendum No. 2 to the specifications for the general construction.

"Our approval of the award of the contract for general construction to Isak Mattson is on the assumption that he received Addendum No. 2 to the specifications for general construction in sufficient time to submit a bid, and that he will enter into a contract for this work in accordance with the plans and specifications, including Addenda Nos. 1 and 2, for the sum of $82,846.00, which sum is arrived at by taking the base bid and deducting Alternates Nos. 2, 5, 6, 7, 12, 13 and 14; and on the condition that the contract for such work, the form of which is contained in the specifications, will include the words: 'including Addendum No. 1, and including Addendum No. 2, issued on May 9, 1936,' at the end of § 3 of Article 1 of the said form of contract."

However, this did not change the contract signed nor in fact add any new condition or provision. Clearly the addition was required primarily to prevent future claims of misunderstanding of terms.

In accordance with the letter from the state director, and on June 8, 1936, the county auditor prepared and mailed to the defendant, "seven counterparts of the contract entered into between yourself and Renville County which have been drawn up to conform with the letter of approval from the PWA office dated May 18th, 1936," and stated he had added to § 3 of Article 1 the provisions hereinbefore required by the state director. Apparently this letter was inspired by a wire and letter from the state director stating: "It is urgent that we have signed contracts of Isak Mattson. Please reply by wire if Isak Mattson signed the revised contracts. Contracts and all other documents should be submitted to this office immediately for our approval."

On the 10th of June the defendant notified plaintiff his bid submitted was based on the wage schedule in the original specifications; that he had heretofore notified them he had not known of the additional addendum containing the increased wage scale when he submitted his bid; and that the wage schedule would increase the labor costs $2234.

On June 17, 1936, notice was served on him, stating that he must submit his signed contract and other documents pertaining to the courthouse project "not later than 10 o'clock A. M. on Saturday, June 20th, 1936," that his failure so to do would "be construed as an intention . . . not to comply with the contract in accordance with your bid. . . . You are further notified that your failure . . . will result in the forfeiture of your check . . . ."

The defendant did not submit a new contract by June 20. He shows that on June 20 he was engaged in a project at Cavalier and the architect there required his presence night and day for the pouring of concrete at that time. However, on the 22nd of June he appeared in Mohall and, as he says, to avoid trouble signed and filed the new contract—the first contract with the provision incorporating specific reference to Addendum No. 2. The commissioners notified him that it had not been "executed and filed on Saturday, June 20th not later than 10 A. M., and therefore, the same was rejected." The defendant was thereupon notified, "Your check accompanying this bid is deemed forfeited because of your failure to enter into the contract upon ac-

ceptance of your bid." The county commissioners, on June 20, awarded the contract to the next lowest bidder. A contract was made with this bidder, was received by the state director June 25, 1936, and by him "approved for conformity with PWA requirements only" on July 3, 1936.

Upon failure of the bank to pay the check this action was brought, Mattson was substituted as defendant, and the case tried to the court as an equity case involving the right of forfeiture. The trial court made findings of fact and conclusions of law favorable to the defendant and judgment was entered "for dismissal of the action and directing the sum of $4,650.00 deposited with the Clerk of the District Court of Ward County be returned to the defendant Isak Mattson." The plaintiff appeals from the judgment, demanding a trial de novo.

Section 1830, subd. 4, of the Compiled Laws, dealing with the construction of public buildings, provides, among other things, that the advertisement for bids "Shall require a certified check on some solvent bank within the state of North Dakota, for not less than five per cent of the amount of the bid to accompany the same, *as guaranty that the bidder will enter into the contract, if his bid be accepted.*"

It is not shown us that any rule or regulation of the Federal Emergency Administration requires the deposit of any such check.

The form of contract included in the plans and specifications was the one that was used by the architect and the board of county commissioners in formulating the contract of May 16, 1936, the blanks being filled to conform to the bid as presented by the defendant.

There can be no question but that under the contract signed by the defendant he could have been held to the requirements of Addendum No. 2. He knew this was part of the contract when he signed it and knew it was so understood by Boyd and the commissioners. The discussion with the latter and with Boyd was limited to the possibility of return to the old wage schedule and consequent reduction of his bid. There was no suggestion of a return to the old wage schedule, and yet the amount of the bid remained the same. Consequently, defendant knew the revised wage schedule was included in this contract and a change would not benefit him.

The defendant deposited the check as guaranty that he would enter

into the contract. Its deposit was required by the statute, and is governed by the purpose therein expressed. In filing his bid the defendant, in effect, said that he would sign a contract in the form and with the implications of the contract set forth in the plans and specifications. The state director approved that form of contract. The defendant did not guarantee that the state director would approve the contract that the defendant signed. He did agree to be bound by the rules and regulations that had already been promulgated and would be promulgated by the state director, at least up to the time that the award would be made.

The requirement of the state director that the words "including Addendum No. 1 and including Addendum No. 2 issued on May 9, 1936," be inserted at the end of § 3 of Article 1 of the contract did not alter the effect of the contract already signed. It might make it more explicit.

There was some dispute as to Addendum No. 2 having been considered by the defendant when he made his bid. It was because of his own carelessness and oversight that he did not notice Addendum No. 2, but before he signed the contract he knew that Addendum No. 2 was included in the contract, though not specifically mentioned, and he signed without fraud or duress. The trial court found he was negligent in that matter, and the finding is correct.

It is true the rules and regulations and the contract itself specified that the contract signed would not be "effective" until approved by the state director though he had approved the form that was signed. Because of the criticism by the state director, negotiations were entered into with the defendant for the incorporation of the desired addition. At no time did the defendant specifically or even inferentially say that he would not sign an amended contract. In his letter of June 18 he notified the board they already had "all the required documents in their possession, including Contract which I signed at the office of the Architect, which contract has not been returned to me, and I am waiting for its return if not accepted." In his testimony he says he had in Mohall made arrangements for furnishing the bonds. The county auditor testified that the necessary construction bond and other documents were not filed in his office.

Defendant did not refuse to sign an amended contract containing the additional specification. He did in fact sign it and it was filed with the board on the 22nd—two days after the date limit fixed—but we are required to determine whether the board had the right under the facts in this case to forfeit the check which was given as a guaranty that he would enter into the contract if his bid was accepted.

The deal is between plaintiff and defendant. They are the parties. If the state director would not approve a contract, there might be a question whether plaintiff would receive its grant, and if he objected to the defendant or to the contract signed by him in this matter it would be quite possible Mattson could not proceed with the work. The state director, in approving the contract with the next lowest bidder, did not pretend to pass upon the legality of either contract. He limited himself to the requirements of PWA.

But the forfeiture must be based on Mattson's wrongful refusal to comply with his agreement. He did as he agreed to do. Both parties knew it was subject to the approval by the state director, but the latter could not disapprove when Mattson signed the form he approved and yet Mattson be held to a forfeiture. When Addendum No. 2 was issued there was no requirement that it should be mentioned specifically in the contract, nor did the state director, when he issued this Addendum, require that the form of the contract he had approved be amended.

The plaintiff is seeking to recover in this case solely on the ground that it had a right to forfeit this check; it does not base its claim on any schedule of damages. The fact that the defendant, when he came to Mohall, signed the new contract rather than have trouble, as he expressed it, is an indication that he was not trying to repudiate his deal. The action of the plaintiff must be based upon reason and good conscience. It was not until the 17th of June that a time limit was set by the board for signing the amended contract. The time was short and the defendant showed unimpeached reasons why he could not be in Mohall at that time. Equity abhors forfeitures and does not confirm them in the absence of clearly stated conditions showing a party entitled to them.

We are not determining the rights of either party to recover damages. This is not involved.

The purpose for which the check was given being fulfilled by the defendant, he is entitled to the return of the money. The judgment is affirmed.

CHRISTIANSON, Ch. J., and NUESSLE, SATHRE and MORRIS, JJ., concur.